E. Daniel Robinson (State Bar No. 254458)
DAN ROBINSON LAW, P.C.
701 East Santa Clara St., Suite 19
Ventura, CA 93001
Phone: (805) 500-3150
dan@danrobinson.law

Attorneys for N.R. and D.R. by and through his parent N.R.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.R. and D.R. by and through his parent N.R. <br><br>     Plaintiffs, <br> vs. <br> Del Mar Unified School District <br>     Defendant. | **'21 CV1759 AJB LL** <br> **COMPLAINT** <br> FOR: <br> 1) Discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*; <br> 2) Discrimination in violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*; <br> 3) Failure to address disability harassment in violation of the Americans with Disabilities Act of 1990; <br> 4) Retaliation in violation of the Americans with Disabilities Act of 1990; <br> 5) Retaliation in violation of Section 504 of the Rehabilitation Act; <br> 6) Appeal of July 13, 2021 Decision of the California Office of Administrative Hearings, 20 U.S.C § 115(i)(2) & Cal. Educ. Code § 5605(k) <br><br> **DEMAND FOR JURY TRIAL** |

*(sidebar)* DAN ROBINSON LAW, P.C. / 701 E. Santa Clara St. Suite 45 / Ventura, CA 93001

## I. INTRODUCTION

1.      Plaintiffs N.R. ("Parent") and D.R. ("Student") by and through his parent N.R. (collectively "Plaintiffs") bring this civil rights action against Del Mar Union School District ("DMUSD") ("Defendant"), under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.,* Section 504 of the Rehabilitation Act of 1974 ("Section 504"), 29 U.S.C. §§ 794, *et seq.*, and the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. § 1400 *et seq*.

2.      Plaintiffs allege Defendant has unlawfully discriminated against Plaintiffs on the basis of D.R.'s disability by preventing D.R. from engaging in certain activities during the school day for reasons based solely on his disability and by segregating him based on his disability and have retaliated against Plaintiffs for advocating on behalf of D.R.'s rights.

3.      Plaintiffs further appeal the California Office of Administrative Hearings' dismissal of D.R.'s request for a due process hearing under the IDEA and seek an adjudication of D.R.'s IDEA claims by this Court.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. § 1331.

5.      Venue is proper in this Court under 28 U.S.C. § 139l (b). The Defendant resides and maintains offices within the Southern District of California and all the acts and omissions giving rise to these claims took place within the Southern District of California.

## III. PARTIES

6.      **Plaintiffs:** D.R. is a twelve-year-old minor with disabilities. D.R. is a resident of San Diego, California, and a pupil within the jurisdiction of DMUSD. D.R. has disabilities related to attention and sensory processing including ADHD, Sensory Processing Disorder, and Dyslexia. D.R. is therefore, a qualified individual

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

2.
COMPLAINT

with a disability within the meaning of the ADA, the Rehabilitation Act. 42 U.S.C. § 12131(2); 29 U.S.C. § 794, and the IDEA, 20 U.S.C. § 1400 *et seq*.

7.     N.R. is D.R.'s parent and resides San Diego, California with D.R.

8.     **Defendant:** Defendant DMUSD is a public entity organized and existing under the laws of the State of California, located in Del Mar, California. DMUSD is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), a "program or activity" that receives federal funding within the meaning of Section 504, 29 U.S.C. § 794(b), and receives state financial assistance within the meaning of California Government Code § 11135(a).

## IV. FACTUAL BACKGROUND

9.     D.R. is a twelve-year-old boy who is currently enrolled in the sixth grade at Ashley Falls Elementary School, within DMUSD.

10.     D.R. has had a special education Individualized Education Plan ("IEP") as required under the IDEA since he entered DMUSD.

**A.     The September 2019 IEP**

11.     D.R.'s IEP dated September 23, 2019, as amended February 14, 2020, May 28, 2020, and June 8, 2020 ("the September 2019 IEP"), required the following for the 2019- 2020 school year:

> (1) Specialized Academic Instruction 825 minutes weekly in separate classroom;
>
> (2) Language and Speech group 1800 minutes yearly "intended to be equally distributed throughout year";
>
> (3) Specialized Academic Instruction 500, minutes weekly group in Regular Classroom Push in services will be provided to support Morning Routine, STEAM + (Technology, Science, Art), Science, and Social Studies in General Education;

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

(4) Occupational Therapy 1800 minutes yearly Individual/Group at service provider location "minutes intended to be distributed evenly throughout the year"; and

(5) Occupational Therapy Group 300 minutes yearly Consultation.

12.    Per the September 2019 IEP, D.R. was to spend 49% of his week in a "Special Day Classroom" – a classroom where there are only special education students and no general education students -- and 51% in General Education Classroom.

13.    Per the September 2019 IEP, D.R. was to receive specifically identified accommodations for his disability, including, *inter alia*

(a) Front loading for transitions and changes in routine,

(b) Preferential seating away from distractions, next to role - models, near instruction, close proximity to teacher.

(c) Individualized positive reinforcement system.

(d) Access to use of left-handed scissors.

(e) Accommodated reading materials (at his independent level) when participating in the general education setting.

(f) The use of a timer or visual timer when working on a mastered task. Visual Math Organizers (e.g., Base Ten Mat).

(g) If/When Student demonstrate anxiety or stress (e.g., During STEAM +), provide access to an alternative academic location for him to continue to access his learning.

(h) Positive reinforcement system when attending STEAM + classes.

(i) When unable to navigate a social conflict, provide Student with an alternative location with an available familiar staff.

(j) Short term Counseling to assist and support with transitions to STEAM +. 15 minutes weekly.

14.     DMUSD counted time in a purported "inclusion" lunch program called "lunch bunch" toward the 41% of D.R.'s school week when, per his IEP, he was supposed to be in general education, rather than in a segregated special education-only setting.

15.     On information and belief, during the 2019-20 school year, the "lunch bunch" program was held, however, in the special education-only classroom. General education students were allowed, but not required to participate. As a result, few if any, general education students ever attended "lunch bunch," and the lunch was effectively a segregated special-education-only lunch.

**B.     Bullying and Insufficient Support in General Education**

16.     During the 2019-20 school year D.R was assigned to a general education science, technology, engineering, arts and mathematics ("STEAM") class for two hours during the day, but often refused to attend because D.R. said he was being bullied by other children in the class.

17.     D.R. said that boys in the general education class were bullying him.

18.     Repeated instances of systematic bullying from other General Education students during the 2019-2020 school year subjected Student to suffer mentally and physically throughout the day, placing him in fear of harm and distracting him from achieving his academic goals.

19.     Examples of bullying aimed at student's disability include being called "stupid" and "dumb -dumb" and "crybaby" by various classmates; being punched in the stomach; having a group of boys make derisive comments and throw tennis balls at him; being told to "go away"; and being left out of activities.

20.     D.R. also complained that he received insufficient adult support in the general education classroom during the 2019-20 school year. D.R.'s general education teacher that year, Ms. Kirby, confirmed in an October 1, 2019 IEP meeting that so-called "push-in" support for special education students in general education classes is reduced between the third and fourth grade in order to force the special education students to become more independent.

21.     This lack of support was in contradiction to the requirements of his IEP, which required five hundred minutes per week of adult "push-in" assistance to help facilitate his inclusion with all of his General Ed peers.

22.     This lack of support exacerbated the effects of the bullying. He was subjected to derision and ridicule without anyone to protect him, except for a pattern of teachers blaming all students equally for poor behavior, after the fact, and always too late to stop the persecution of this disabled student, who is instead blamed for the behavior of his classmates.

23.     Because of the bullying and the lack of support, D.R. missed a substantial amount of his scheduled time in general education in the 2019-20 school year, prior to the school being closed because of the COVID-19 epidemic.

**C.     Distance Learning**

24.     As a result of the epidemic, D.R. was assigned to distance learning beginning in March 2020 and continuing through the end of the 2019-20 School Year. At that time, Student's last agreed upon placement and services were those under the September 2019 IEP. After assigning Student to distance learning,

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

however, DMUSD ceased to provide the services and accommodations required under his IEP.

25.    Student needs personal interaction with instructors and other students including in -person services. None of these can be provided in a distance -learning environment without significant accommodation, possibly including providing them in -person through other means.

26.    Examples of this problem can be seen in Student's goals. Student has documented goals in areas of need in his last two years of IEPs, including the operative IEP he is presently under. Goals drive the services and environment for a student's education. D.R.'s September 2019 IEP identifies a number of key goals, but it was impossible for him to achieve those goals in a distance -learning environment.

27.    If it is impossible for Student to meet a goal, then the services and program offered by the District are not appropriate.

28.    Student was assigned to distance learning beginning in March 2020 and continuing through the end of the 2019-2020 School Year. During that time, DMUSD did not evaluate Student for the effect his disabilities would have on his ability to learn, nor did DMUSD provide the accommodations needed to enable Student to be able to obtain a free and appropriate public education "FAPE" in a distance -learning environment. As a result, during that time period, Student regressed in all areas.

**D.    2020-21 School Year**

29.    In August 2020, D.R.'s parent N.R. was informed that, in contradiction to the requirements of his IEP, D.R. would be placed in a segregated special day class 100% of the time.

30.    On September 8, 2020, N.R. submitted a request for a due process hearing with the California Office of Administrative Hearings ("OAH") seeking to

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

have D.R. placed, as required by his IEP, at least part time in the general education classroom ("the September 2020 Hearing Request").

31.     On October 1, 2020, the Administrative Law Judge ("ALJ") assigned to hear N.R.'s request for due process issued an order directing DMUSD to place D.R. full-time in the general education classroom. The ALJ explained that under D.R.'s IEP, D.R. is supposed to "spend a majority of time in the general education setting." Thus, if DMUSD had to choose whether to place him full-time in a cohort of special education students or general education students (as it claimed to have to do for reasons having to do with COVID-19 precautions) then it should choose the general education placement.

32.     This result was mandated not only by the ALJ's logic, but also by the IDEA, which requires that:

> (i) To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled; and (ii) Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

34 C.F.R. 300.114(2).

33.     However, rather than include him in the general education classroom with push-in support as required by his IEP, when he was moved to the general education class in-person 100% starting in Oct 2020, on information and belief, during at least part of his school day, D.R. was required to sit by himself viewing the special day class via a video conference system.

34.     On information and belief, this denial of D.R.'s right to be educated as per the Order was in retaliation for N.R.'s advocacy for D.R. including her bringing the September 2020 Hearing Request case against DMUSD.

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

35.     Because of her understanding of DMUSD's vindictive placement of D.R. in front of a video-conference system showing him the special day class while he was in the general education classroom, and because she had obtained the order requiring D.R. to be placed in general education, N.R. voluntarily withdrew the remainder of her request for due process with OAH.

36.     After N.R. dismissed the Due Process case, DMUSD sent her a notice indicating it would no longer abide by the OAH "stay-put" order, and from November 11, 2020, and until the end of the 2020-21 school year, DMUSD again placed D.R. in a segregated special day class for 100% of the day. He was told to access general education classes "virtually" through a video conference system even though his general education peers were in those same classes in person. D.R. accessed the video conference system while sitting in the special day class, in the hallway, in a "quiet room," or in some other isolated location on the school campus.

37.     At no time did N.R. consent to D.R. being kept away from his non-disabled peers for the entire day, or to him accessing classes while in school via video conference, or to him being placed in a "quiet room" or in the hallway for entire class periods during the school day.

38.     On information and belief, this denial of D.R.'s right to be educated as per his IEP and his right to be educated to the greatest extent possible with his non-disabled peers was in retaliation for N.R.'s advocacy for D.R. including her bringing the September 2020 Hearing Request case against DMUSD.

39.     Placing student in a restrictive special education classroom and isolating him from students during his general education "mainstreaming" time has caused him to regress educationally.

**E.      December 2020 Due Process Proceeding**

40.     In or around early November 2020, N.R. was approached to join in a purported "class action" on behalf of California special education students who had

9.
COMPLAINT

been denied the services and supports provided for in their IEPs during distance learning due to COVID-19.

41. The purported "class action" was being brought by a law firm that advertises it is led by "James Daniel Peters III the Executive Director of the Special Education Law Division of the Law Offices of Sheila C. Bayne" (hereinafter "the Peters Firm").

42. N.R. agreed to be represented by the Peters Firm on December 18. 2020, the Peters Firm filed a request for due process on D.R.'s behalf with the Office of Administrative Hearings ("OAH"). The matter was first continued January 28,2021.

43. The matter was continued two more times at DMUSD's request, on March 26 and May 19, 2021. The second request to continue was opposed by the Peters Firm.

44. Additionally, the matter was consolidated with a separate request for due process brought by DMUSD against D.R.

45. During the time N.R. and D.R. were represented by the Peters Firm, she was repeatedly unable to obtain information regarding the status of her case.

46. According to its press releases, the Peters Firm actually settled what it still calls on its website the "class action" against the State of California. But per the settlement agreement, (a) the action was never qualified as a class action; (b) the only plaintiffs that were part of that action were the named plaintiffs; and (c) in the settlement agreement, which is public, the named plaintiffs did not receive any compensation or any other consideration for settling the case.

47. On information and belief, the Peters Firm failed to qualify a class because it failed to exhaust administrative remedies for each of the hundreds of parents that signed up to be part of the "class action" and thus had to bring separate actions for each represented child in the Office of Administrative Hearings.

According to the Peters Firm's news release, at the time it represented N.R. it also represented plaintiffs in lawsuits against school districts in *977 counties* regarding the issue of services provided during COVID-19.[1]

48.     According to the Peters Firm's website, the firm employs only four attorneys, plus Executive Director Mr. Peters and a "senior partner" who also appears to be a non-attorney. Accordingly, it is unsurprising that during this time period, N.R. had a hard time getting the firm to respond to her phone calls and emails to find out what was happening with her case.

49.     N.R. did not even have any communication with the Peters Firm regarding DMUSD's complaint against D.R. until June 25, 2021.

50.     At that time, she became alarmed that it appeared the Peters Firm was focusing its efforts solely on COVID-19-related issues and not on the placement, services, and bullying issues she cared about.

51.     Again unable to reach the firm on the phone, on June 28, 2021, N.R. took matters into her own hands and filed a motion to continue the case and to amend D.R.'s due process request.

52.     OAH denied the motion without prejudice on the grounds that N.R. did not "have standing" to bring the motion because D.R. (by and through N.R.) was represented by counsel.

---

[1] *See*, https://www.newswise.com/politics/special-ed-suit-against-ca-newsom-settled-acknowledging-federal-and-state-law-requires-in-person-services-for-students-with-special-needs (last visited October 10, 2021)

11.
COMPLAINT

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

53.     N.R. attended the video conference pre-hearing conference with the OAH ALJ, the Peters Firm, and DMUSD's counsel on June 28, 2021, and objected to the matter proceeding as a consolidated matter. On the record in that proceeding, N.R. explained that the Peters Firm was not retained to represent D.R. or N.R. in defending the due process case brought by DMUSD against them. The ALJ denied the motion.

54.     On June 29. 2021, N.R. filed a motion for reconsideration and to continue. OAH took no action on the motion based on its "standing" argument.

55.     On July 1, 2021, the Peters Firm filed a motion for permissive withdrawal in the case filed by DMUSD.  OAH again took no action on the motion to withdraw, arguing that D.R. could not be represented by an attorney and parent simultaneously in the consolidated action.

56.     On July 6, 2021, the day before the scheduled hearing, Parent filed motions to reconsider, vacate or reverse prior OAH rulings denying, or taking no action on, the prior motions to continue, and taking no action on the motion for permissive withdrawal by counsel.

57.     Parent also filed a motion to compel and requested other relief based on her lack of access to the case files.

58.     The ALJ hearing the motion made clear his displeasure that the motion was "filed one day before commencement of the hearing in the consolidated matter," notwithstanding that N.R. had been attempting to resolve these matters and to assert her rights for over a week, with no action by the ALJ.

59.     Despite these serious issues, the ALJ insisted on beginning the multi-day hearing on the consolidated due process cases on July 7. At the beginning of the hearing, however, he revisited the question of the Peters Firm's representation of D.R. in the case brought by DMUSD and finally granted the motion for the

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

COMPLAINT

Peters Firm to withdraw in that case, unconsolidated the cases, and continued the hearing in the case brought by DMUSD to August 24, 2021.

60.     The hearing on D.R.'s due process case proceeded via video conference on July 7 and July 8, 2021. Five witnesses were called, including an expert witness hired by the Peters Firm.

61.     The hearing was reconvened for a third day on July 13, 2021.

62.     At the commencement of the hearing on July 13, 2021, the ALJ considered a new motion by N.R. to, *inter alia*, reconsider and vacate certain prior orders, continue the hearing, and to discharge N.R.'s and D.R.'s attorneys.

63.     The Peters Firm confirmed receipt of the motion and made an oral motion to withdraw.

64.     The ALJ in hearing the motion stated that if he granted it, the hearing would go forward and he would once again deny N.R.'s motion for continuance, despite having granted two previous motions for continuance brought by DMUSD and despite the obvious prejudice N.R. and D.R. would suffer if forced to continue with the hearing without having a chance to hire a new attorney and without even having access to the evidence in the case.

65.     The ALJ told N.R. she had a choice: keep her current attorneys who were proceeding on their own agenda to prove their purported "class action" rather than proving the parts of the case N.R. actually felt were important to D.R., or move forward with the case by herself, unrepresented and with no access to the evidence. Neither choice offered N.R. or D.R. due process of law.

66.     The ALJ granted the attorneys' motion to withdraw. N.R. refused to call a new witness – indeed, given the lack of communication from the Peters Firm, she did not have any way to understand the purpose of each witness, even assuming she had a copy of the witness list at her home where she was attending the video conference.

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

67.     On the record in the hearing, N.R. objected to proceeding because she was not given an opportunity to hire new counsel, she was not provided any documents by OAH or the Peters Firm, and she did not have access to the proprietary "Caselines" system used by OAH for displaying evidence in the hearing.

68.     In response, the ALJ summarily dismissed D.R.'s entire case "with prejudice."

69.     A search of the California Administrative Procedure Act reveals no authority for an ALJ to dismiss a request for due process at all without rendering a decision on the merits, and no mention of dismissing a due process hearing request "with prejudice." The ALJ in this case cited no authority that would enable him to dismiss N.R.'s request for due process without rendering a decision on the merits. Even assuming the two days of hearing that occurred were all the process N.R. was due, such hearings typically allow for post-hearing briefing. In her case, N.R. was not even offered that opportunity.

**F.     2020 IEP**

70.     During this same time period, DMUSD and N.R. were attempting to develop a new IEP for D.R., as required yearly under the IDEA. DMUSD, however, refused to schedule enough time to discuss the numerous issues in the IEP, and thus had to continue the discussions over and over again when meetings ran out of time. And each time a new meeting was required, DMUSD scheduled it far in the future, thus leading what should have been two or three meetings over two or three days to be five meetings over eight months.

71.     For each IEP meeting, N.R. had to take time off from work. DMUSD refused to allow any meetings to be scheduled later than 2:20 p.m. Meetings were held on September 22, 2021, October 12, 2021, October 20, 2021, January 14, 2021, and February 1, 2021.

14.
COMPLAINT

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

72.     During most of these meetings, DMUSD fills the time having staff read from pre-prepared reports and goals. Parent input is relegated to a "parent concerns" box in a form. DMUSD refuses to discuss the primary concern of the parent – D.R.'s placement in the segregated special education classroom rather than with his nondisabled peers – until it has finished reading through all of its pre-prepared materials in the order it determines they should be read.

73.     Following the February 1, 2021 meeting, DMUSD still had not gotten through all of the pages of materials it demands be read verbatim during its IEP meetings, and thus requested N.R. provide dates for yet another meeting – another date when she would have to take time off from work, and which she now had no reason to assume would lead to discussion of the key issue of D.R.'s placement.

74.     Moreover, during this time, N.R. was represented by the Peters Firm and needed their input on whether they wanted to attend the IEP meeting and, if not, whether she should attend. She was unable to get a response to those questions from the Peters Firm.

75.     DMUSD met without N.R. on April 12, 2021, and completed the reading of the IEP materials and then made a unilateral decision regarding D.R.'s placement and services. None of the attendees, however, signed the "final" IEP.

76.     The April 12, 2020 IEP is deficient in numerous respects.

77.     Student is in need of behavioral intervention in dealing with his significant frustration levels. However, DMUSD refused to provide the necessary behavior intervention plan.

78.     In a perhaps unintentional admission that D.R. made little to no progress while in distance learning and segregated in the special day class, the goals DMUSD proposed for the 2020 IEP did little more, if anything, than repeat prior goals.

79.    Student needs constant prompting, needs constant consistent monitoring and assistance during all parts of the school day, in the classroom, and in lunch, and assemblies. An aide is needed to assist with academic, behavioral, and functional tasks, and interactions. Student requires a behavior aide during general education instructional times and while on the school campus.

80.    Additionally, the proposed 2020 IEP failed to offer an appropriate intensive program to address extensive areas of need such as: Vocabulary, Zip/Unzip, Button/Unbutton clothing, Use of Utensils -does not use a Fork, Opening Containers, Clumsy and Un-coordinated sometimes, Learning New Motor Skills, Significant Adverse Reactions/Fear/ Difficulty to Cutting Finger Nails, Loud and Unexpected Noises, Clothing Textures/fabric, Avoids Climbing, Avoids messy Play/getting dirty, Craves Movement sometimes. Using Appropriate Tone/Volume (Student makes unexpected noises and gets out of his seat during instruction), Making on Topic Comments During Conversations (Student makes off -topic conversations when the presented work or activity is perceived as difficult or non - preferred), Appropriate Interactions (Student inappropriately questions others and/or tells others to follow their schedules, questioning another student's location), Elision, Blending Words, Phoneme Isolation, Phonological Memory: Memory for Digits, Nonword Repetition. Phonological Awareness: Elision, Blending Words, Phoneme Isolation, Phonological Memory: Memory for Digits, Nonword Repetition.

81.    D.R. has also has not made sufficient progress in attaining his behavior goals to address his repeated tendency to avoid tasks during instructional time. Rather, he refuses to focus and be redirected to stay on task, i.e., refusing to cooperate in speech and language shutting down completely during non -preferred tasks. The 2020 IEP failed to address these issues.

16.
COMPLAINT

82. The proposed 2020 IEP also did not include proper behavior goals or a sufficient service amount and service model to address Student's needs in the area of auditory processing sensory deficits.

83. The proposed 2020 IEP also did not provide D.R. adequate accommodations and services to address numerous areas of need including:

       i. Vocabulary;

       ii. Zip/unzip and button/unbutton clothing;

       iii. Use of utensils;

       iv. Opening containers;

       v. Clumsy and uncoordinated sometimes;

       vi. Learning new motor skills;

       vii. Significant adverse reactions/fear;

       viii. Difficulty cutting fingernails;

       ix. Loud and unexpected noises;

       x. Clothing/texture fabrics;

       xi. Avoids climbing;

       xii. Avoids messy play/getting dirty;

       xiii. Craves movement sometimes;

       xiv. Using appropriate tone/volume;

       xv. Making on-topic comments during conversations;

       xvi. Appropriate interactions;

       xvii. Elision (omitting of sounds in speech);

       xviii. Blending words;

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

17.

xix. Phoneme isolation;

xx. Phonological memory;

xxi. Memory for digits;

xxii. Nonword repetition; and

xxiii. Phonological awareness.

84.     DMUSD did not and still has not addressed D.R.'s regression during the March 2019 to June 2020 time period when he was in distance learning.

**G.     2021-22 School year**

85.     In the 2021-22 school year, DMUSD continues to deprive D.R. of his right to be educated with his non-disabled peers. For instance, although D.R.'s operative IEP states that he is in general education more than 50% of the time, he is not included on the list of children in the general education class and is not included with the general education class for purposes of school photos. This is more than a mere recordkeeping issue: D.R. cares deeply about being included, and his exclusion from class lists and from picture days only serves to emphasize to D.R. that the school sees him as less than equal to his general education peers.

## **V. CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF:**

**DISCRIMINATION IN VIOLATION OF THE ADA**
ADA, 42 U.S.C. §§ 12101, *et seq.*; 28 C.F.R. § 35.130(b)(1)(i)

86.     Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

87.     Plaintiff D.R. is, and at all relevant times has been, an individual with a disability within the meaning of the ADA. D.R.'s disability substantially limits

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

one or more major life, including learning, reading, concentrating, thinking, and emotional regulation.

88.     Plaintiff D.R. is, and at all relevant times has been, qualified to participate in Defendant's educational programs and services as a school-age child living within the DMUSD regional area.

89.     Defendant DMUSD is, and at all relevant times has been a public entity covered by Title II of the ADA. 42 U.S.C. § 12131(1).

90.     D.R. was excluded from participation in and denied the benefits of DMUSD's services, programs and activities, and was discriminated against by DMUSD.

91.     As one example, D.R. was excluded from participation in the general education classroom for nearly all of the 2020-21 school year.

92.     D.R. could have participated in the general education classroom with his nondisabled peers for all, or nearly all, of every school day with appropriate accommodations including but not limited to those listed in his IEP and including, if necessary, a one-on-one aide.

93.     The aforementioned exclusion, denial of the benefits, and discrimination was by reason of D.R.'s disability.

94.     To the extent that such exclusion, denial of benefits, and discrimination was the result of DMUSD's response to the COVID-19 epidemic, DMUSD failed to operate its COVID-19-related services, programs, and activities so that the service, program, or activity, when viewed in its entirety, was readily accessible to and usable by individuals with disabilities.

95.     Unless Defendant is enjoined by this court, it will continue to violate the ADA and discriminate against D.R., continuing to inflict irreparable harm to Plaintiffs.

96.    Plaintiffs are entitled to injunctive relief because Plaintiffs have suffered an irreparable injury, the remedies at law are inadequate, and the balance of equities and the public interest weigh in favor of an injunction against Defendant.

97.    Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiff is further entitled to reasonable attorneys' fees and costs as a result of Defendant's discrimination.

## **SECOND CLAIM FOR RELIEF:**

### **DISCRIMINATION IN VIOLATION OF SECTION 504**
Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.*; 34 C.F.R. § 104(b)(i)

98.    Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

99.    DMUSD receives and at all relevant times has received federal assistance and thus is and has been covered by Section 504.

100.    Plaintiff D.R. is, and at all relevant times has been, an individual with a disability within the meaning of Section 504. D.R.'s disability substantially limits one or more major life activities, including learning, reading, concentrating, thinking, and emotional regulation.

101.    D.R. was excluded from participation in and denied the benefits of DMUSD's services, programs and activities, and was discriminated against by DMUSD.

102.    As one example, D.R. was excluded from participation in the general education classroom for nearly all of the 2020-21 school year.

103.    D.R. could have participated in the general education classroom with his nondisabled peers for all, or nearly all, of every school day with appropriate

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

20.
COMPLAINT

accommodations including but not limited to those listed in his IEP and including, if necessary, a one-on-one aide.

104. The aforementioned exclusion, denial of the benefits, and discrimination was by reason of D.R.'s disability.

105. To the extent that such exclusion, denial of benefits, and discrimination was the result of DMUSD's response to the COVID-19 epidemic, DMUSD failed to operate its COVID-19-related services, programs, and activities so that the service, program, or activity, when viewed in its entirety, was readily accessible to and usable by individuals with disabilities.

106. Unless Defendant is enjoined by this court, it will continue to violate Section 504 and discriminate against D.R., continuing to inflict irreparable harm to Plaintiffs.

107. Plaintiffs are entitled to injunctive relief because Plaintiffs have suffered an irreparable injury, the remedies at law are inadequate, and the balance of equities and the public interest weigh in favor of an injunction against Defendant.

108. Pursuant to the remedies, procedures, and rights set forth in Section 504, Plaintiff is further entitled to reasonable attorneys' fees and costs as a result of Defendant's discrimination.

### THIRD CLAIM FOR RELIEF:

**FAILURE TO ADDRESS DISABILITY HARASSMENT IN VIOLATION OF THE ADA**

[ADA, 42 U.S.C. §§ 12101, *et seq.*; 28 C.F.R. § 35.130(b)(1)(i)]

109. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

110. Plaintiff D.R. is, and at all relevant times has been, an individual with a disability within the meaning of the ADA. D.R.'s disability substantially limits

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

one or more major life activities, including learning, reading, concentrating, thinking, and emotional regulation.

111.   D.R. is, and at all relevant times has been, qualified to participate in Defendant's educational programs and services as a school-age child living within the DMUSD regional area.

112.   Defendant is, and at all relevant times has been a public entity covered by Title II of the ADA. 42 U.S.C. § 12131(1).

113.   D.R. was harassed by peers based on his disability repeatedly at least during the 2019-20 school year.

114.   The harassment was sufficiently severe, pervasive, and persistent so as to interfere with or limit D.R.'s ability to participate in or benefit from the services, activities, or opportunities offered by the school. For instance, it caused him to miss substantial class time when he was punished for his alleged role in the harassment and when the emotional distress caused by the harassment caused him to act in ways that led to further punishment and removal from class and from school.

115.   DMUSD was aware D.R. was being harassed on the basis of his disability. For instance, in October 2020, both D.R. and N.R. reported to DMUSD incidents of children hitting and kicking D.R. Later that month, N.R. also reported children spitting at D.R.

116.   On information and belief, other examples of bullying include instances when other children called D.R. "stupid" and "dumb -dumb" and "crybaby"; punched D.R. in the stomach; made derisive comments and threw tennis balls at him; told him to "go away"; and excluded him from activities.

117.   DMUSD failed sufficiently to respond to N.R.'s and D.R.'s complaints of disability harassment. DMUSD contends it conducted an investigation but refuses to provide the results of that investigation. On information and belief, it did

not take any action to end the harassment or prevent future cases of harassment. District perpetuated the existence of a hostile educational environment for D.R.

118.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered humiliation, ongoing significant emotional anguish, and harm, psychological, social, emotional, and educational damage.

119.   Unless Defendant is enjoined by this court, it will continue to violate the ADA and will continue to fail to protect D.R. from bullying, resulting in irreparable harm to Plaintiffs.

120.   Plaintiffs are entitled to injunctive relief because Plaintiffs have suffered an irreparable injury, the remedies at law are inadequate, and the balance of equities and the public interest weigh in favor of an injunction against Defendant.

121.   Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiff is further entitled to reasonable attorneys' fees and costs for Defendant's failure to address disability harassment against D.R.

### FOURTH CLAIM FOR RELIEF:

### RETALIATION IN VIOLATION OF THE ADA
ADA, 42 U.S.C. §§ 12101, *et seq.*; 28 C.F.R. § 35.130(b)(1)(i)

122.   Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

123.   Plaintiff D.R. is, and at all relevant times has been, an individual with a disability within the meaning of the ADA. D.R.'s disability substantially limits one or more major life activities, including learning, reading, concentrating, thinking, and emotional regulation.

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

23.
COMPLAINT

124.   D.R. is, and at all relevant times has been, qualified to participate in Defendant's educational programs and services as a school-age child living within the DMUSD regional area.

125.   Defendant is, and at all relevant times has been a public entity covered by Title II of the ADA. 42 U.S.C. § 12131(1).

126.   In response to the above-referenced discrimination, exclusion, harassment, bullying, and insufficient support, *inter alia*, N.R. has advocated vigorously on behalf of her son with DMUSD. This activity is protected under the ADA.

127.   As just one example, N.R. filed the September 2020 Hearing Request to ensure her son was given the time in general education to which he was entitled under his IEP after DMUSD attempted to block him from receiving that general education time.

128.   DMUSD knew of N.R.'s protected advocacy activities.

129.   DMUSD took adverse actions against Plaintiffs in response to N.R.'s protected advocacy activities.

130.   The adverse actions DMUSD took against Plaintiffs were reasonably likely to deter Plaintiffs and those similarly situated from engaging in similarly protected advocacy activities.

131.   As just one example, after N.R. prevailed in obtaining the stay-put order against DMUSD, on information and belief, DMUSD retaliated against her and D.R. by making D.R. spend at least part of the day in the general education classroom on video conference looking at what was occurring in the segregated special day classroom rather than allowing him to participate in the classroom where he was seated with his nondisabled peers.

132.   As another example, as soon as N.R. withdrew the September 2020 Hearing Request, DMUSD put D.R. back into a segregated special day class for

COMPLAINT

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

100% of the day for the rest of the year even though they had been previously told by the OAH that such placement was not legal.

133.   As other examples, in response to N.R.'s in-person advocacy, DMUSD has instructed teachers not to speak with her and has intercepted her emails to teachers. When asked by N.R.'s counsel if there was a systematic plan in place to intercept N.R.'s emails and if teachers were able to receive N.R.'s emails, DMUSD officials and teachers refused to provide a yes or no answer. When asked to provide the details of any such plan if it exists, DMUSD failed to do so.

134.   There was a causal connection between N.R.'s protected activity and adverse actions taken by DMUSD against D.R. and N.R.

135.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered humiliation, ongoing significant emotional anguish, and harm, psychological, social, emotional, and educational damage.

136.    Unless Defendant is enjoined by this court, it will continue to violate the ADA and will continue to fail to protect D.R. from bullying, resulting in irreparable harm to Plaintiffs.

137.   Plaintiffs are entitled to injunctive relief because Plaintiffs have suffered an irreparable injury, the remedies at law are inadequate, and the balance of equities and the public interest weigh in favor of an injunction against Defendant.

138.   Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188, Plaintiff is further entitled to reasonable attorneys' fees and costs for Defendant's failure to address disability harassment against D.R.

### **FIFTH CLAIM FOR RELIEF:**

### **RETALIATION IN VIOLATION OF SECTION 504**

Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.*; 34 C.F.R. § 104(b)(i)

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

139.   Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

140.   DMUSD receives and at all relevant times has received federal assistance and thus is and has been covered by Section 504.

141.   Plaintiff D.R. is, and at all relevant times has been, an individual with a disability within the meaning of Section 504. D.R.'s disability substantially limits one or more major life activities, including learning, reading, concentrating, thinking, and emotional regulation.

142.   In response to the above-referenced discrimination, exclusion, harassment, bullying, and insufficient support, *inter alia*, N.R. has advocated vigorously on behalf of her son with DMUSD. This activity is protected under the ADA.

143.   As just one example, N.R. filed the September 2020 Hearing Request to ensure her son was given the time in general education to which he was entitled under his IEP after DMUSD attempted to block him from receiving that general education time.

144.   DMUSD knew of N.R.'s protected advocacy activities.

145.   DMUSD took adverse actions against Plaintiffs in response to N.R.'s protected advocacy activities.

146.   The adverse actions DMUSD took against Plaintiffs were reasonably likely to deter Plaintiffs and those similarly situated from engaging in similarly protected advocacy activities.

147.   As just one example, after N.R. prevailed in obtaining the stay-put order against DMUSD, on information and belief, DMUSD retaliated against her and D.R. by making D.R. spend at least part of the day in the general education classroom on video conference looking at what was occurring in the segregated

special day classroom rather than allowing him to participate in the classroom where he was seated with his nondisabled peers.

148.   As another example, as soon as N.R. withdrew the September 2020 Hearing Request, DMUSD put D.R. back into a segregated special day class for 100% of the day for the rest of the year even though they had been previously told by the OAH that such placement was not legal.

149.   As other examples, in response to N.R.'s in-person advocacy, DMUSD has instructed teachers not to speak with her and has intercepted her emails to teachers. When asked by N.R.'s counsel if there was a systematic plan in place to intercept N.R.'s emails and if teachers were able to receive N.R.'s emails, DMUSD officials and teachers refused to provide a yes or no answer. When asked to provide the details of any such plan if it exists, DMUSD failed to do so.

150.   There was a causal connection between N.R.'s protected activity and adverse actions taken by DMUSD against D.R. and N.R.

151.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered humiliation, ongoing significant emotional anguish, and harm, psychological, social, emotional, and educational damage.

152.   Unless Defendant is enjoined by this court, it will continue to violate the ADA and will continue to fail to protect D.R. from bullying, resulting in irreparable harm to Plaintiffs.

153.   Plaintiffs are entitled to injunctive relief because Plaintiffs have suffered an irreparable injury, the remedies at law are inadequate, and the balance of equities and the public interest weigh in favor of an injunction against Defendant.

154.   Pursuant to the remedies, procedures, and rights set forth in Section 504, Plaintiff is further entitled to reasonable attorneys' fees and costs for Defendant's failure to address disability harassment against D.R.

27.
COMPLAINT

**SIXTH CLAIM FOR RELIEF:**

**DENIAL OF FREE AND APPROPRIATE PUBLIC EDUCATION**
20 U.S.C § 115(i)(2) & Cal. Educ. Code § 5605(k)

155.   Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs and incorporate them herein as if separately alleged.

156.   Both the IDEA and the Cal. Educ. Code Sec. 5600 et seq. require that Defendant provide a free and appropriate public education in the least restrictive environment.

157.   Defendant denied D.R. a free and appropriate public education in the least restrictive setting at least by:

1) assigning Student to distance learning without continuing to provide in-person services to Student,

2) assigning Student to distance learning without evaluating Student and providing necessary accommodations to ensure he could obtain a FAPE through distance learning

3) failing to develop an IEP that

   a. included proper behavior goals or a sufficient service amount and service model to address Student's needs in the area of auditory processing sensory deficits;

   b. included proper academic goals;

   c. offered sufficient intensive individual services in the form of a one-to one aide for the entire school day;

   d. offered sufficient transportation to and from school on the bus;

   e. gave Student adequate accommodations and services to address the following areas of need:

      i. Vocabulary;

      ii. Zip/unzip and button/unbutton clothing;

      iii. Use of utensils;

28.
COMPLAINT

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

iv.  Opening containers;

v.  Clumsy and uncoordinated sometimes;

vi.  Learning new motor skills;

vii.  Significant adverse reactions/fear;

viii.  Difficulty cutting fingernails;

ix.  Loud and unexpected noises;

x.  Clothing/texture fabrics;

xi.  Avoids climbing;

xii.  Avoids messy play/getting dirty;

xiii.  Craves movement sometimes;

xiv.  Using appropriate tone/volume;

xv.  Making on-topic comments during conversations;

xvi.  Appropriate interactions;

xvii.  Elision (the omission of a sound or syllable when speaking);

xviii.  Blending words;

xix.  Phoneme isolation;

xx.  Phonological memory;

xxi.  Memory for digits;

xxii.  Nonword repetition; and

xxiii.  Phonological awareness;

f.  Address developing behavioral issues and diminishing academic, speech development, fine and gross motor skills, and other skills

4)  failing to address the regression Student suffered as a result of being assigned to distance learning from March 2020 through the end of the 2019-20 school and to December 18, 2020

29.
COMPLAINT

5) failing to protect D.R. from bullying.

158.   In OAH's July 13, 2021 Decision, the ALJ erred, abused his discretion, and denied Plaintiffs their right to due process when he failed to decide any of the above issues on the merits and instead summarily dismissed Student's request for due process.

159.   Additionally or in the alternative, Plaintiffs have exhausted their administrative remedies as required by the IDEA, and thus are entitled to have their claim for denial of a free and appropriate public education heard by this Court.

160.   As a result of Defendant's continuing conduct, D.R. suffered loss of educational opportunities and significant psychological, physical and developmental harm.

161.   D.R. is aggrieved by the ALJ's disposition of the underlying due process hearing request and by Defendant's failure to provide required services and accommodations during the time D.R. was in distance learning; its failure to develop an adequate IEP; and its failure to protect D.R. from bullying, thereby denying D.R. the same access to an education afforded to his nondisabled peers, as that term is used in 20 U.S.C. § 1415(i)(2)(A) and Cal. Educ. Code § 56505(k).

## VII. ATTORNEYS' FEES

162.   Plaintiff is entitled to and seeks an award of attorneys' fees and costs pursuant to the ADA, 42 U.S.C. § 12205, the Rehabilitation Act, 29 U.S.C. § 794a(b), and Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. § 1400 *et seq*.

## VIII. PRAYER FOR RELIEF

163.   Plaintiff respectfully requests that this Court enter judgment on Plaintiff's behalf and enter injunctive and declaratory relief as follows:

DAN ROBINSON LAW, P.C.
701 E. Santa Clara St. Suite 45
Ventura, CA 93001

1) An Order determining that Plaintiffs are the prevailing party on all issues;

2) A permanent injunction enjoining Defendant from discriminating against either Plaintiff on the basis of D.R.'s disability;

3) An award of compensatory education sufficient to compensate D.R. for the educational benefit he was denied between August 2019 and the present;

4) A permanent injunction ordering Defendant to cease and desist segregating special education students away from their nondisabled peers during class time, recess, lunch, and at all other times unless an independent third-party investigation into alternatives and accommodations reveals that the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily;

5) A permanent injunction ordering Defendant to cease and desist intercepting N.R.'s emails and interfering with her communication with D.R.'s teachers;

6) An Order awarding Plaintiff reasonable attorneys' fees and costs; and

7) Any and all other relief the Court deems appropriate, just, equitable and proper.

## IX. DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all claims as provided for in Rule 38 of the Federal Rules of Civil Procedure.

31.
COMPLAINT

1

2

3   Respectfully submitted,

4   Dated: _____10/11/2021_____          **DAN ROBINSON LAW, P.C.**

5

6   By:_____

7          E. DANIEL ROBINSON
        Attorneys for N.R. and D.R. by and through
8        his parent N.R.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT