UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.R. and D.R. by and through his parent, N.R.,<br><br>                                    Plaintiffs,<br>v.<br><br>DEL MAR UNIFIED SCHOOL DISTRICT,<br>                                    Defendant. | Case No.: 21-cv-01759-AJB-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 9)** |

Before the Court is Defendant Del Mar Unified School District's ("Defendant" or "District") motion to dismiss Plaintiffs N.R. and D.R.'s (collectively, "Plaintiffs") First Amended Complaint ("FAC"). (Doc. No. 9.) Plaintiffs filed a response, to which Defendant replied. (Doc. Nos. 11, 12.) For the reasons set forth, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

I.  **BACKGROUND**

Plaintiff D.R. ("D.R.") is a twelve-year-old special education student of the District. (Doc. No. 6, FAC ¶ 6.) D.R. is a disabled student whose disabilities are related to attention and sensory processing, including ADHD, Sensory Processing Disorder, and Dyslexia. (*Id.*) As a special education student with a disability, Plaintiff is eligible for protections under the Individuals with Disabilities Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"). (*Id.*)

Plaintiff N.R. ("Parent") is D.R.'s parent and resides with D.R. in San Diego. (*Id*. ¶ 7.) Defendant is a public entity organized and existing under the laws of the State of California, located in Del Mar, California. (*Id*. ¶ 8.)

At the relevant time, D.R. was attending Ashley Falls Elementary School, located within the District, and for the 2019-2020 school year, had a special education Individualized Education Plan ("IEP") ("2019 IEP"). (*Id*. ¶¶ 9, 10.) The IEP required, among other things, that D.R. was to spend 49% of his week in a "Special Day Classroom" where there were only special education students and no general education students. (*Id*. ¶¶ 10–12.) D.R. was to spend 51% of his week in a general education classroom with general education students. (*Id*.) Parent contends that, during that year, the District violated the 2019 IEP because the District included as part of D.R.'s general education time a period called the "lunch bunch." (*Id*. ¶14.) Parent alleges that because only special education students attended "lunch bunch," the lunch period functioned as a de facto segregated special-education-only lunch. (*Id*. ¶ 15.) Parent also claims that D.R. refused to attend a general education science, technology, engineering, arts, and mathematics ("STEAM") class for two hours per day because general education students were bullying him. (*Id*. ¶¶ 16–19.) Parent additionally alleges that D.R. did not receive sufficient adult "push-in" support per the 2019 IEP, which required five hundred minutes per week to help facilitate D.R.'s inclusion with his peers in the general education classroom during the 2019-2020 school year. (*Id*. ¶¶ 20–23.)

Beginning in March 2020 and continuing through the end of the school year, and because of the COVID-19 pandemic, D.R. was assigned to distance learning. (*Id*. ¶ 24.) Parent asserts that during this time, the District ceased to provide D.R. the services and accommodations needed to enable D.R., per the 2019 IEP, to obtain a free and appropriate public education ("FAPE") in a distance-learning environment. (*Id*. ¶¶ 24–27.) As a result, D.R. regressed in all areas. (*Id*. ¶ 28.)

In August 2020, because of a District policy related to the COVID-19 pandemic, the District placed D.R. in a segregated special day class 100% of the time. (*Id*. ¶¶ 29, 30.) On

September 8, 2020, Parent submitted a request for a due process hearing with the California Office of Administrative Hearings ("OAH"), seeking to have D.R. placed at least part time in the general education class, as required by the 2019 IEP. (*Id*. ¶ 31.)

On October 1, 2020, the Administrative Law Judge assigned to hear Parent's request for due process issued an order directing the District to place D.R. full-time in a general education classroom. (*Id*. ¶ 32.) The judge explained that under the 2019 IEP, D.R. is supposed to "spend a majority of time in the general education setting," and if the District had to choose whether to place D.R. full-time in a single cohort of students, then it should choose the general education placement over the special education placement. (*Id*.) Per the OAH's order, the District moved D.R. to a general education class, but D.R. spent some of his time in general education class sitting by himself and viewing the special education day class via a video conference system. (*Id*. ¶ 37.)

Having secured an order by the OAH as to D.R.'s placement in a general education classroom, Parent withdrew the rest of her request for due process with the OAH. (*Id*. ¶ 36.) The District then sent Parent a notice indicating it would no longer abide by the OAH's October 1, 2020, "stay-put" order, and that from November 11, 2020 until the end of the 2020-2021 school year, the District would place D.R. in a segregated special day class again for 100% of the day, and that he would be able to access general education classes virtually through the video conference system. (*Id*. ¶ 37.) Plaintiffs contend that this violation of the 2019 IEP was in retaliation for Parent's advocacy for D.R., and that it caused D.R. to regress socially, behaviorally, and educationally. (*Id*. ¶¶ 35, 38.)

In November 2020, Parent joined a class action on behalf of California special education students who had been denied services and support provided for in their IEPs during distance learning due to COVID-19. (*Id*. ¶ 41.) The Peters Firm brought the class action, and Parent agreed to be represented the Peters Firm. (*Id*. ¶ 42.) On December 18, 2020, the Peters Firm filed a request for a due process hearing on D.R.'s behalf with the OAH ("Plaintiffs' Due Process Complaint"). (*Id*. ¶ 43.) That matter was later consolidated with a separate due process request filed by the District against D.R. (the "District's Due

Process Complaint"). (*Id.* ¶ 45.)

On June 28, 2021, about ten days before the consolidated due process hearing was scheduled to begin, Parent began filing her own motions to continue the case and to amend Plaintiffs' Due Process Complaint. (*Id.* ¶ 52.) The OAH denied the motions without prejudice because Parent was represented by the Peters Firm. (*Id.* ¶ 53.) At the pretrial video conference that same day, Parent objected to the due process hearings proceeding as a consolidated matter, explaining that the Peters Firm had not been retained to represent D.R. or Parent in defending against the District's Due Process Complaint. (*Id.* ¶ 54.) The next day, Parent filed her own motions for reconsideration and to continue the consolidated due process hearings, on which the OAH took no action because Parent and D.R. were still represented by counsel. (*Id.* ¶ 55.)

On July 1, 2021, the Peters Firm filed a motion for permissive withdrawal in the District's Due Process Complaint. (*Id.* ¶ 56.) The OAH took no action on the motion to withdraw, reasoning that D.R. could not be represented by an attorney on the Plaintiffs' Due Process Complaint and a parent on the District's Due Process Complaint simultaneously in the consolidated action. (*Id.*) On the day before the consolidated due process hearings, Parent again filed her own motions to reconsider, vacate, or reverse prior OAH rulings denying or taking no action on the prior motions to continue and taking no action on the motion for permissive withdrawal by counsel. (*Id.* ¶ 57.) Parent also filed a motion to compel and requested other relief based on her lack of access to the case files. (*Id.* ¶ 58.)

At the outset of the July 7, 2021 consolidated hearings, the presiding Administrative Law Judge ("ALJ") granted the Peters Firm's motion to withdraw in the District's Due Process Complaint, bifurcated Plaintiffs' Due Process Complaint and the District's Due Process Complaint, and continued the hearing on the District's Complaint to August 24, 2021. (*Id.* ¶ 60.) The ALJ confirmed with Parent whether she was still willing to go forward on Plaintiffs' Due Process Complaint hearing represented by the Peters Firm, and she

confirmed that she was. (Doc. No. 12-1, Exh. 1 at 7.)[1]

The due process hearing commenced on July 7, 2021, and continued through the next day, with five witnesses testifying. (FAC ¶ 61.) The ALJ resumed the hearing on July 13, 2021, at the outset of which Parent filed another pro se motion to reconsider and vacate certain prior orders, continue the hearing, and to discharge the Peters Firm as Plaintiffs' attorneys. (*Id*. ¶¶ 62–64.) Parent confirmed to the ALJ that she no longer wished to be represented by the Peters Firm, and the Peters Firm thereafter made an oral motion to withdraw as Plaintiffs' attorneys. (*Id*. ¶¶ 63, 64.) The ALJ informed Parent of the consequences of granting the Peters Firm's motion to withdraw, including that Parent would have to proceed pro se as representative of Plaintiffs and should be prepared to call her next witness. (*Id*. ¶ 66.) Parent again confirmed she wanted to terminate Plaintiffs' attorneys. (Doc. No. 12-1, Exh. 1 at 4–5.)

The ALJ granted the Peters Firm's motion to withdraw, and after a brief recess, asked Parent to call Plaintiffs' next witness. (*Id*. at 5.) Parent requested an injunction to stop the proceeding, which the ALJ denied. (*Id*.) The ALJ gave Parent a brief recess to prepare to call her next witness, and when the hearing resumed, Parent objected to proceeding. (*Id*. at 5.)

After the ALJ once again warned Parent that she would need to proceed because no further continuances would be granted, Parent refused to go forward. (*Id.* at 5–7.) The ALJ then granted the District's motion to dismiss Plaintiffs' Due Process Complaint with prejudice. (FAC ¶ 69.)

Around the same time, Parent and the District attempted to develop a new IEP for D.R. for the next school year, as required yearly under the IDEA. Over a period of eight months, five meetings took place. (*Id*. ¶ 71.) According to the FAC, on April 12, 2021, the

---

[1] Defendant attached to its briefing a copy of the OAH ruling on July 13, 2021. (Doc. No. 12-1.) Because Plaintiffs' FAC references the OAH ruling, and because the ruling forms the basis of their claims, the Court considers its contents under the incorporation by reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). As the OAH ruling is incorporated by reference, Defendant's request for judicial notice of the same is denied as moot.

District completed a reading of D.R.'s IEP without Parent and made a decision concerning D.R.'s placement and services ("2020 IEP"). Parent contends that the 2020 IEP is deficient both procedurally and substantively, and does not address D.R.'s behavior issues, his auditory processing sensory deficits, or the provision of adequate accommodations and services to address numerous areas of need. (*Id.* ¶¶ 77–81.)

On October 12, 2021, Plaintiffs filed this civil action, asserting violations of the ADA, Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, and an appeal of the July 13, 2021 decision of the OAH to dismiss Plaintiffs' Due Process Hearing Complaint. (Doc. No. 1.) Defendant then filed a Motion to Dismiss Plaintiffs' Complaint, and Plaintiffs filed a FAC in lieu of an opposition. (Doc. Nos. 3, 6.) Defendant's Motion to Dismiss the FAC follows. (Doc. No. 9.)

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, i.e. whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the motion, the Court "must accept as true all of the allegations contained in a complaint," but it need not accept legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Neither must a court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001)).

## III.   DISCUSSION

Defendant seeks to dismiss the entirety of Plaintiffs' FAC, arguing that: (1) all of Plaintiffs' claims are subject to the IDEA's exhaustion requirement; (2) Plaintiffs failed to

exhaust their administrative remedies; and (3) none of the exceptions to the exhaustion requirement applies. The Court discusses the purpose and background of the IDEA and considers Defendant's arguments in turn.

### A.     IDEA Purpose and Background

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs[.]" 20 U.S.C. § 1400(d)(1)(A). The IDEA offers federal funds to States in exchange for a commitment to provide a FAPE to all children with certain physical or intellectual disabilities. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017) (citing § 1401(3)(A)(i) (listing covered disabilities)). Under the statute, an individualized education program or IEP "serves as the primary vehicle for providing each child with the promised FAPE." *Id.* at 749 (internal quotations and citation omitted). The IEP is crafted by a child's "IEP Team," comprising of school officials, teachers, and parents, and documents the child's present academic achievement, yearly goals, and the special education and related services to be provided to achieve those goals. *Id.*

The IDEA also "provides a framework for promptly addressing disputes over an IEP." *D.D. by & through Ingram v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1043, 1049 (9th Cir. 2021) (en banc). "To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides)." *Fry*, 137 S. Ct. at 748 (citing § 1415(b)(6)). The complaint generally triggers a preliminary meeting and offer an opportunity to resolve the dispute through mediation. *See id.*; *D.D.*, 18 F.4th at 1049. "If the grievance remains, the parties proceed to a due process hearing before an impartial arbiter, who determines whether the child received a FAPE." *D.D.*, 18 F.4th at 1049 (citation omitted).

"[A] parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court." *Fry*, 137 S. Ct. at 749 (citing § 1415(i)(2)(A)). Before filing a civil action, however, parents must first exhaust

their administrative remedies. § 1415(l). Exceptions to the administrative exhaustion requirement are limited to instances where "resorting to the administrative process would be either futile or inadequate." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).

With the purpose and statutory framework of the IDEA in mind, the Court turns to the merits of the instant motion to dismiss.

### B. Failure to Exhaust Administrative Remedies

As previously noted, Defendants argue that all of Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies. Plaintiffs raise six claims—one of which is for an appeal of the OAH's July 13 decision pursuant to the IDEA, and the others for claims arising under federal statutes other than the IDEA. Plaintiffs concede that their IDEA claim requires administrative exhaustion but contend that the rest of their claims do not.

"A plaintiff seeking relief for the denial of a FAPE ordinarily must exhaust the administrative process before filing a lawsuit, even if the plaintiff asserts claims arising under the Constitution or a federal statute other than the IDEA." *Martinez v. Newsom,* No. 20-56404, -- F.4th --, 2022 WL 3642172, at *6 (9th Cir. Aug. 24, 2022). To determine whether a plaintiff must exhaust administrative remedies "in a case purportedly invoking statutes other than the IDEA," a court must "determine whether the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—a free appropriate public education." *Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019) (citing *Fry*, 137 S. Ct. at 748) (alterations omitted)

To assist the court's inquiry, the Supreme Court in *Fry v. Napoleon Community Schools* offered clues, including (1) "whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school," (2) "whether an adult at the school could have pressed essentially the same grievance," and (3) "whether the plaintiff previously invoked administrative remedies."

*Paul G.*, 933 F.3d at 1100. If the answers to the first two questions are yes, then the gravamen of the complaint probably does not implicate the IDEA's concern for appropriate education because "'the same basic suit' could go forward without the FAPE obligation." *D. D.*, 18 F.4th at 1050 (quoting *Fry*, 137 S. Ct. at 756). However, if the answers are no, "the complaint probably concerns a FAPE, as 'the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.'" *Id.* As to the third question, a plaintiff's initial choice to invoke the IDEA's administrative procedures may suggest that the relief sought is indeed for the denial of a FAPE. *Id.* at 1051.

### 1. Discrimination Claims under the ADA & Section 504

Turning to whether Plaintiffs' non-IDEA claims are subject to exhaustion, the Court begins with their disability discrimination claims under the ADA and Section 504. In support of their ADA and Section 504 claims, Plaintiffs point to paragraphs 91 through 93 of the FAC. According to Plaintiffs, the District discriminated against D.R. based on his disability when it responded to the COVID-19 pandemic by placing D.R. in a "cohort" of all disabled children that was kept strictly segregated from non-disabled children for nearly all of the 2020-21 school year. (FAC ¶¶ 91–93.)

Having reviewed the substance of the FAC, the Court finds that Plaintiffs have simply recast what are essentially IDEA claims as ADA and Section 504 discrimination claims. *See Fry*, 137 S. Ct. at 755 (The examination of a plaintiff's complaint "should consider substance, not surface" and exhaustion of non-IDEA clams is required "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."). Plaintiffs' allegations that D.R. was denied access to the general education classroom necessarily implicates the denial of a FAPE because they relate to the individualized educational requirements set forth in D.R.'s 2019 IEP and the OAH "stay-put" order, which required that D.R. spend the majority of his time in a general education classroom. (FAC ¶¶ 12, 32.)

Applying the *Fry* factors, the Court finds that Defendant's denial of an appropriate

school placement and related educational services is not a claim that Plaintiff could have brought at a public facility other than a school, and an adult at the school could not have pursued the same education-based grievances as Plaintiffs. *See Fry*, 137 S. Ct. at 756. Further evidencing that the gravamen of Plaintiffs' discriminations claims is a denial of a FAPE, Plaintiffs initially invoked the IDEA's administrative procedures. *See id.* at 757 ("A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings."). Prior to filing this suit, Plaintiffs "submitted a request for a due process hearing" with the OAH "seeking to have D.R. placed, as required by his IEP, at least part time in the general education classroom." (FAC ¶ 31.)

Accordingly, the Court finds that a close examination of Plaintiffs' FAC reveals that the gravamen of their discrimination claims under the ADA and Section 504 is the denial of the IDEA's core guarantee of a FAPE, and thus, administrative exhaustion is required. *See Fry*, 137 S. Ct. at 755.

### 2. Harassment Claim under the ADA

Next, the Court turns to Plaintiffs' harassment claim under the ADA. Plaintiffs point to paragraphs 111 through 115 of the FAC as the basis for their harassment claim. According to Plaintiffs, general education students physically harassed and bullied D.R. based on his disability during the 2019–2020 school year, and the District was aware of the harassment. (FAC ¶¶ 111, 113.) Plaintiffs allege that the other school children harassed D.R. by calling him names, hitting him, making derisive comments about him, and leaving him out of activities. (*Id.* ¶¶ 19, 113, 114.) Plaintiffs assert the harassment caused D.R. to "miss substantial class time" and that the "emotional distress caused by the harassment caused him to act in ways that led to further punishment and removal from class and from school." (*Id.* ¶ 112.) Plaintiffs claim the District knew about the harassment, but "did not take any action to end the harassment or prevent future cases of harassment," thereby "perpetuat[ing] the existence of a hostile educational environment for D.R." (*Id.* ¶ 115.)

Plaintiffs contend their harassment claim does not require exhaustion and cite *D. D. by & through Ingram v. Los Angeles Unified Sch. Dist.* in support. Plaintiffs represent to


the Court that in *D.D.*, the Ninth Circuit found that claims of physical abuse and harassment "do not require exhaustion." (Doc. No. 11 at 10.) Plaintiffs are mistaken. While the Ninth Circuit noted "that D.D.'s operative complaint contains some allegations arguably unrelated to the District's obligation to offer a FAPE, such as physical abuse by students and harassment by staff[,]" it nevertheless found D.D.'s claims require exhaustion. *Id.* at 1055. ("[T]he allegations in this case require exhaustion."). The Ninth Circuit did not create a categorical rule that claims of physical abuse and harassment do not require exhaustion. To the contrary, the *D.D.* court emphasized "that the inquiry necessarily turns on the specific factual allegations of each complaint." *Id.* After conducting a substantive review of D.D.'s complaint, the Ninth Circuit found that exhaustion under the IDEA was required because D.D. (1) chose not to draft a complaint focused on the physical abuse and harassment allegations or seek relief only for damages arising from them, (2) "offered a complaint that maps almost perfectly onto his IDEA claims," and (3) "alleges he will continue to suffer loss of equal education opportunity." *Id.* Similar circumstances are present here.

Like the plaintiff in *D.D.*, Plaintiffs in this case did not draft a complaint focused on harassment allegations, nor do they seek relief only for damages arising from them. *See id.* Instead, they offered a FAC that maps closely their claims for a denial of a FAPE, which in this instance concerns the IEP requirement that D.D. be provided "five hundred minutes per week of adult 'push-in' assistance to help facilitate his inclusion with all of his General Ed peers." (FAC ¶ 21.) Plaintiffs argue that the denial of "push-in" support is separate from their harassment claims. But that is not how they pled their claims. Tellingly, in the FAC, Plaintiffs organized the allegations pertaining to D.R.'s harassment and those pertaining to the lack of adult push-in support under the same subheading titled: "Bullying and Insufficient Support in General Education." There, Plaintiffs describe the bullying D.R. suffered, and immediately after, describe the District's failure to provide adequate adult push-in support to facilitate D.R.'s inclusion in the general education classroom. (*Id.* ¶¶ 16–23.) Indeed, Plaintiffs themselves expressly relate the two, alleging "[t]his lack of

support exacerbated the effects of the bullying" and caused D.R. to miss substantial time in general education. (*Id.* ¶¶ 22, 23, 112.) Plaintiff also explicitly pled that the District denied D.R. a FAPE by "failing to protect D.R. from bullying." (*Id.* ¶ 155.) Plaintiffs' artful attempt to separate the harassment claim from the District's obligation to provide a FAPE is therefore unavailing.

Turning then to the first question under *Fry*—whether Plaintiffs could "have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library," 137. S. Ct. at 756—the Court is hard-pressed to find that a child could claim that a public library or theater should provide sufficient adult support for that child to facilitate his or her inclusion among peers in that public facility. As to *Fry*'s second question: whether an adult visitor or employee at the school could bring the same claim, the Court answers no. Like in *D.D.*, the Court finds it difficult to picture an adult visitor or employee at the school request the District to provide adult push-in support to facilitate inclusion in the general education classroom. *See* 18 F.4th at 1054. The difficulty of transplanting the FAC to those other contexts suggests that its essence, despite its wording, is the provision of a FAPE. *See Fry*, 137 S. Ct. at 757.

As for the third *Fry* factor, which concerns whether Plaintiffs have previously invoked the IDEA's dispute resolution procedures, the record is unclear as to whether Plaintiffs filed a formal complaint over the alleged lack of adequate push-in support. At the very least, however, the FAC shows that Plaintiffs made their complaint that D.R. received insufficient adult support known to teachers as the matter was the topic of an IEP meeting. (FAC ¶ 20.) In the Court's view, this history also indicates that the crux of the claims is for the denial of individually tailored educations services for children with disabilities.

Having considered the *Fry* factors, the Court finds the gravamen of Plaintiffs' harassment claim under the ADA is the denial of a FAPE, and therefore requires

exhaustion. *See Fry*, 137 S. Ct. at 756–57; *D.D.*, 18 F.4th at 1049–51.

### 3. Retaliation Claims under the ADA and Section 504

With respect to their retaliation claims under the ADA and Section 504, Plaintiffs allege that Parent advocated on behalf of D.R. with respect to the discrimination, exclusion, harassment, bullying, and insufficient support D.R. experienced at school, and that the District retaliated against Parent for her advocacy by denying "D.R.'s right to be educated as per his IEP and his right to be educated to the greatest extent possible with his non-disabled peers." (FAC ¶ 39, 124.) Plaintiffs argue their retaliation claims are not subject to exhaustion because the IDEA supports only claims by students and does not provide a claim for retaliation. (Doc. No. 11 at 9.) Plaintiffs cite cases in support of their argument. All of them, however, are distinguishable because either they do not pertain to a parent's advocacy for the denial of a FAPE or do not address the issue of exhaustion.

While the Ninth Circuit has yet to rule on whether relief for retaliation must satisfy the IDEA's exhaustion, other circuits have held exhaustion is required when the retaliatory acts are related to the student's efforts to obtain a FAPE. For example, in *Weber v. Cranston Sch. Comm.*, the First Circuit found that because the parent's retaliation claim was "related to the identification, evaluation, or educational placement of her child, and to her efforts to gain for him the provision of a free appropriate public education," the parent "had to invoke the due process hearing procedures of IDEA before filing her retaliation claim in federal court." 212 F.3d 41, 51–52 (1st Cir. 2000) (internal quotations omitted). In so finding, the First Circuit relied on the text of the IDEA's complaint provision, which "affords the 'opportunity to present complaints with respect to *any* matter *relating to* the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" *Id.* at 51 (quoting § 1415(b)(6)) (emphasis in original).

Addressing similar issues, the Eleventh and Third Circuits also looked to the plain text of the IDEA and found the same. *See M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158–59 (11th Cir. 2006) (exhaustion required where the parents' retaliation claims "clearly relate" to their child's "evaluation and education," they are subject to the

exhaustion requirement.); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 274–75 (3d Cir. 2014) (exhaustion required where the parent's retaliation claims "palpably relate to the District's provision of a FAPE," and there was a "logical path to be drawn" between the parent's advocacy efforts to obtain a FAPE and the retaliation claims).

The Court finds the reasoning in these cases persuasive. *See also C.O. v. Portland Pub. Sch.*, 679 F.3d 1162, 1168 (9th Cir. 2012) (citing with approval the Eleventh Circuit's finding in *M.T.V.* that "retaliation in the form of additional testing fell within the gambit of the IDEA because it related to the identification, evaluation, or educational placement of the child or the provision of a FAPE to such a child") (internal alterations and quotations omitted). Thus, guided by the IDEA's text and the aforementioned cases, the Court concludes that Parent's retaliation claims are subject to the IDEA's exhaustion requirement because they directly relate to her advocacy efforts in obtaining for D.R. a FAPE, and there is no indication that the relief she seeks is unavailable under the IDEA.

* * *

In sum, although not expressly pled as IDEA claims, the Court finds based on the above analyses that the gravamen of Plaintiffs' discrimination, harassment, and retaliation claims are for the denial of a FAPE and are thus subject to the IDEA's exhaustion requirement. To the extent Plaintiff argues the ALJ's dismissal of the due process complaint filed by the Peters Firm on their behalf serves as exhaustion of these issues, the Court disagrees. Plaintiffs' FAC indicates that the due process complaint did not encompass the specific "placement, services, and bullying issues [Parent] cared about." (FAC ¶ 51.) As the record is not clear on whether the due process complaint included the allegedly discriminatory, harassing, and retaliatory conduct Plaintiffs raise here, the Court declines to find that the July 13 OAH decision satisfies exhaustion of those issues.

Lastly, to the extent Plaintiffs argue exhaustion of these issues would be futile, the Court again disagrees. In determining whether an exhaustion exception applies, the "inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the

administrative scheme." *Hoeft*, 967 F.2d at 1303. Here, the answer is no. The factual record on these claims have not been developed below and there is no substantive finding on whether D.R. received a FAPE. Thus, applying the futility exception in this case would not serve the purpose of the IDEA's administrative scheme, which "is intended to prevent courts from acting as ersatz school administrators and making what should be expert determinations about the best way to educate disabled students." *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 876 (9th Cir. 2011), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). *See also Hoeft*, 967 F.2d at 1303. ("Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.").

Accordingly, the Court **GRANTS** Defendant's motion to dismiss these claims for failure to exhaust administrative remedies.

### 4.     Appeal of the July 13 OAH Decision

Finally, as to their appeal of the July 13 OAH decision, Plaintiffs concede this claim is subject to the IDEA's exhaustion requirement but argue the decision is ripe for judicial review. The Court agrees. However, because the ALJ dismissed Plaintiffs' due process complaint on procedural grounds and did not reach the substantive issue of whether D.R. received a FAPE, the Court's review is limited to the procedural findings.

To summarize, the ALJ found dismissal appropriate, stating "[g]ood cause does not exist for a third continuance of this matter." (Doc. No. 12-1 at 6.) In its decision, the ALJ explained that in the middle of the third day of Plaintiffs' due process hearing, Parent terminated the Peters Firm. (*Id.* at 6–7.) The ALJ informed Parent she would be expected to proceed with the hearing and notified her of the consequences of failing to do so. (*Id.* at 5, 7.) Despite the warnings, Parent refused and requested a long continuance to hire new counsel. (*Id.* at 7.) Considering the procedural posture of the case and finding the District

would be prejudiced by a lengthy continuance, the ALJ did not find good case for Parent's requested continuance. Because it found no good cause for a continuance, the ALJ dismissed the case with prejudice on procedural grounds.

Accordingly, there being no substantive factual findings or conclusions of law in the ALJ's decision, the present appeal is limited to the procedural question of whether the ALJ properly dismissed Plaintiffs' due process complaint for lack of good cause for a continuance and Parent's refusal to proceed with the scheduled hearing. *See, e.g.*, *Matthews v. Douglas Cnty. Sch. Dist. RE 1*, No. 17-CV-3163-MSK-STV, 2018 WL 4829644, at *1 (D. Colo. Oct. 4, 2018) (limiting the scope of review on appeal in a similar manner).

## IV.   CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss the FAC. (Doc. No. 9.) Only Plaintiffs' appeal of the ALJ's dismissal for failure to participate in the hearing will proceed before this Court. The other claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED**.

Dated:  September 2, 2022

Hon. Anthony J. Battaglia
United States District Judge